IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK04-83112-TJM |
| ) | A06-8105-TJM |
| JOHN PATRICK RAYNOR, ) | |
| ) | |
| Debtor(s). ) | CH. 7 |
| RICHARD D. MYERS, Trustee of the ) | |
| John P. Raynor Chapter 7 Bankruptcy, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| MAUREEN RAYNOR, ) | |
| ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| JOHN PATRICK RAYNOR, ) | |
| ) | |
| Intervenor. ) | |

ORDER

      This matter is before the court on the defendant's motion for partial summary judgment (Fil. #131) and resistance by the plaintiff (Fil. #158). Alan E. Pedersen represents the plaintiff and Elizabeth M. Callaghan represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

      Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004); Williams v. Marlar (In re Marlar), 267 F.3d 749, 755 (8th Cir. 2001).

      Over several years beginning in 1993, the parents of defendant Maureen Raynor gave Christmas gifts of Berkshire Hathaway stock in certificate form to Maureen Raynor and John Raynor. The certificates were in both names. Those stock certificates have been referred to by the parties as the "O'Connor shares" to differentiate them from other shares received in the names of Maureen Raynor and John Raynor from John Raynor's parents ("Raynor shares") and shares received as an inheritance by Maureen Raynor from her grandparents ("Janousek shares"). Each of the certificates were delivered to Maureen Raynor and John Raynor on Christmas Eve in the years 1993 to 2002. In 2003 and 2004, shares of Berkshire Hathaway were delivered by wire transfer directly to a brokerage account owned solely by Maureen K. Raynor. See attachment "A" to John Raynor's affidavit (Ex. 2 to Fil. #133).

From time to time, John Raynor, believing that the gifts from the O'Connors were meant to be owned solely by Maureen Raynor, indorsed stock powers in blank and delivered them to Maureen Raynor. See Maureen Raynor's affidavit (Ex. 1 to Fil. #133) and John Raynor's affidavit (Ex. 2 to Fil. #133), plus the affidavit of William E. O'Connor (Ex. 3 to Fil. #133).

Each year, upon receipt of the share certificate, Maureen Raynor would, shortly after receiving the share certificate, place it in a safe deposit box. From at least 1999, although the safe deposit box was held in the name of both Maureen Raynor and John Raynor, John Raynor had no key to the box and never accessed it except for one occasion, January 5, 2001. See attachment to Ex. E to Fil. #159.

The bankruptcy case of John Raynor was filed on September 13, 2004. In January of 2004, Maureen Raynor removed all of the certificates and the stock powers from the safe deposit box and had the certificates registered in her name only by her brokerage firm. On September 13, 2006, the trustee filed this adversary proceeding to avoid the January 2004 transactions as fraudulent transfers under Nebraska law.

Maureen Raynor has filed this motion for summary judgment concerning John Raynor's interest in O'Connor shares received by her during three separate time periods. In the first portion of the motion she is asserting that her sole possession of the certificates and the executed stock powers caused her to acquire all rights in the Berkshire Hathaway shares for all those shares received by her prior to September 13, 2002, which she claims is the fraudulent transfer "look-back period" under Nebraska law. However, the bankruptcy petition date, rather than the date the trustee files the complaint, commences the look-back period of four years under the Nebraska Uniform Fraudulent Transfer Act, § 36-710.[1] So, for this portion of the motion, I will consider her argument as dealing with those shares received prior to September 13, 2000.

Her authority for such an assertion is Nebraska Uniform Commercial Code §§ 8-301, -302, and -304.[2] Those statutory provisions describe the manner in which a stock certificate and all rights in the security represented by the stock certificate can be transferred. In those sections, the term "purchaser" is used. That term is defined in Neb. Rev. Stat. U.C.C. § 1-201(30): "Purchaser" means

---

[1] The Bankruptcy Code provides the trustee with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act, Neb. Rev. Stat. §§ 36-701 to -712. The state fraudulent transfer statute encompasses liability for transfers for less than reasonably equivalent value made either (1) when the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, or (2) while the debtor was insolvent or which caused the debtor to become insolvent. Neb. Rev. Stat. §§ 36-705(a)(2), -706(a).

[2] Delivery of a certificated security to a purchaser occurs when the purchaser acquires possession of the security certificate with an indorsement by the transferor. Neb. Rev. Stat. U.C.C. §§ 8-301(a)(1) and -304(c).
Upon delivery of a certificated or uncertificated security to a purchaser, the purchaser acquires all rights in the security that the transferor had or had power to transfer. Neb. Rev. Stat. U.C.C. § 8-302(a).

a person who takes by purchase. A "purchase" includes taking by gift or any other voluntary transaction creating an interest in property. Neb. Rev. Stat. U.C.C. § 1-201(29). Under § 8-301, together with § 8-304(c), delivery of the certificate to a "purchaser" occurs when the purchaser acquires possession of the security certificate. Under § 8-302, a "purchaser" acquires all rights in the security that the transferor had or had a power to transfer.

In this case, the evidence presented by Maureen Raynor is that each year, upon receipt of the gift of the share or shares of stock from her parents, she took possession of the certificate and placed it in a safe deposit box. John Raynor, understanding that the intent of the O'Connors was to make certain the gift benefitted Maureen Raynor, indorsed stock powers in blank and delivered them to Maureen Raynor so she could get the certificates registered in her name only.

In terms of § 8-301, delivery was made from John Raynor to Maureen Raynor when she took possession of the security. The trustee cites case law holding that where a joint tenant holds property titled in the names of joint tenants, such possession is deemed to represent possession for the benefit of both of the joint tenants. Andrews v. Troy Bank & Trust Co., 529 So. 2d 987 (Ala. 1988); Ogilvie v. Idaho Bank & Trust Co., 582 P.2d 215 (Idaho 1978). However, this case is not about joint tenancy property. The share certificates received from the O'Connors contained no "joint tenants with right of survivorship" language and neither of those cases involved a person taking possession of share certificates along with the power to have that property registered in the name of the person with possession. In this case, Maureen Raynor had possession of co-owned property – the share certificates – and of stock transfer powers enabling her to register the certificates in her name alone.

The trustee requests that the motion be denied because, the trustee argues, genuine issues of material fact remain as to whether Maureen Raynor even had sole and exclusive possession of the security certificate based upon the safe deposit box records provided to him and the lack of evidence offered as to what parties had the right to obtain access to this safe deposit box. He further argues that Maureen Raynor's possession of stock certificates issued jointly with John Raynor, together with stock powers in blank, are not conclusive as to what the parties' intentions were with these transactions or as to when the transfers at issue were authorized and completed. Finally, he argues that where a stock power in blank is allegedly held with several stock certificates titled in the names of John and Maureen Raynor as co-owners, it is unclear what the intended purpose of the blank stock power was and what the party receiving the blank stock power was authorized to transfer with such a blank stock power. He claims that these are issues of fact which should be resolved after full and complete discovery and after full presentation of evidence as to the conflicting evidence on the intent of the parties. He also argues that he should be afforded the opportunity to confront and cross-examine Maureen Raynor, John Raynor and all the other witnesses so the Court can fully consider the credibility of the allegation and statements that bear on these issues.

Whether he has taken advantage of it or not, the trustee has had the opportunity to take the depositions of Maureen Raynor, John Raynor and other witnesses. He has presented no transcripts of testimony from any deposition which contradict the affidavit testimony of Maureen Raynor and John Raynor concerning their practices with regard to the certificates received from the O'Connors. Although the Nebraska U.C.C. statute, § 8-301, does not depend upon the intent of the parties to the transaction for a transfer to be complete, Maureen Raynor's evidence is that the intent of the parties was for her to obtain possession of the certificates with the power to transfer them into her own name. The safe deposit box records referred to by the trustee, the safe deposit entry slips which are part of Exhibit E to Filing #159, are totally consistent with the position taken by Maureen

Raynor. That is, she controlled the safe deposit box, John Raynor had no key to it, and he is only shown to have exercised access into the box, with her present, once, in January of 2001.

I find, based upon the evidence presented, that there is no material issue of fact concerning whether Maureen Raynor became the owner, as between John Raynor and Maureen Raynor, of the certificated shares received from the O'Connors from 1993 to 1999. There is no evidence contradicting her position on this matter. She became the owner when she took possession of the certificates and received at least one indorsed stock power from John Raynor. I therefore find that that portion of the motion dealing with those certificated shares is granted.

The O'Connors also gave Maureen Raynor and John Raynor share certificates in December of 2000, 2001, and 2002. Those dates are within the four-year look back period in the Nebraska statute which gives the trustee the opportunity to attempt to avoid the transfer of John Raynor's interest in the certificates. Concerning these share certificates, Maureen Raynor takes the position that although John Raynor's name appears along with hers on the certificates, he obtained no property interest in them because he was simply a conduit for the O'Connor's gifts to her. It is her position that the O'Connors always intended the gifts to be to her only and that John Raynor knew such was the case, so he acquired no interest in the gifted stock.

Maureen Raynor's position on this issue is not supported by the evidence. Her father, William E. O'Connor, submitted affidavit testimony which is part of the Index of Evidence at Filing #133. In that affidavit, at paragraph 4, he informs that the purpose of the gift program is to decrease the size of his and his wife's estate by presently passing a portion of their estate to their ten children on a tax-free basis. At paragraph 8 he states, "The Debtor [John Raynor] as well as the spouses of Affiant's other children are made beneficiaries of the marketable securities gifted for the purpose of allowing a larger dollar value of the gifts without incurring Federal gift taxes."

The Internal Revenue Code, at 26 U.S.C. § 2503(b), provides for the exclusion of certain gifts from the total taxable gifts: "In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year, the first $10,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. . . ." The statute contains a formula for inflation adjustments for gifts made in years following 1998.

Therefore, in order for the O'Connors to benefit from the gift tax exclusion, a gift of shares of stock in the name of John Raynor must have transferred to him a present interest in the stock. If the full value of the stock share gift went to Maureen Raynor through the "conduit" of John Raynor, the O'Connors would not have received the full maximum benefit from their gifting program. In addition to the statutory necessity for the gift to create a property interest in John Raynor, William O'Connor's affidavit (Ex. 3 to Fil. #133) lends even further support at paragraph 11 when discussing the electronic transfers of shares in 2003 and 2004, which will be more fully dealt with below. There he states, "Affiant made the gifts in 2003 and 2004 to Defendant's sole account unaware that Debtor had no ownership interest in said account. Again, spouses are included in the gifts to maximize the sum that Affiant can transfer without incurring gift taxation."

It is clear that the intent of the gift each year was that John Raynor had an interest in it so that the O'Connors could receive the benefit of reducing their estates while minimizing gift tax obligations.

As with the shares received prior to September 13, 2000, Maureen Raynor became the

owner of these shares when she took possession and had the indorsement of John Raynor on one or more stock transfer powers. Even so, the trustee retains the right to attempt to avoid the transfer of John Raynor's interest. Nebraska U.C.C. §8-303 provides that the "purchaser" is only protected from such avoidance action if the purchaser gives value. Here, Maureen Raynor received John Raynor's interest in the shares for no consideration.[3]

The portion of the motion for summary judgment dealing with the gifts received by Maureen and John Raynor in December of 2000, 2001 and 2002 is denied. The transfer of John Raynor's interest in those share certificates is subject to the rights of the trustee under the avoidance statute.

The final portion of the motion for summary judgment deals with gifts received in 2003 and 2004. Those were electronically transferred from the brokerage account of the O'Connors to the brokerage account of Maureen Raynor which was held in her name alone. John Raynor had no ownership interest in the brokerage account. It is the position of Maureen Raynor that such transfers into an account owned by her provided no ownership interest in John Raynor in the gifted shares. John Raynor's affidavit (Ex. 2 to Fil. #133) claims that shares transferred electronically on April 24, 2003, and February 17, 2004, by wire transfer were only in the name of Maureen K. Raynor. That assertion is contradicted by the evidence presented by the trustee from the brokerage account records.

Although shares of Berkshire Hathaway were transferred electronically, apparently both in 2003 and 2004, to Maureen Raynor's brokerage account which was owned by her and in which John Raynor had no interest, it appears from the evidence that the shares were transferred into the name of Maureen Raynor and John Raynor. The trustee has presented a record of a wire or electronic transfer on February 13, 2004, into the brokerage account, but in both names. See Ex. C to Fil. #159. Neither party has presented evidence of the transfer in 2003 that is referred to in the motion. However, evidence presented by Maureen Raynor in the form of the affidavit of her father is that "Affiant made gifts in 2003 and 2004 to defendant's sole account unaware that Debtor had no ownership interest in said account. Again, spouses are included in the gifts to maximize the sum that Affiant can transfer without incurring gift taxation." Ex. 3 to Fil. #133, at ¶ 11. It appears that Mr. O'Connor realized the transfer gift was to both Maureen and John Raynor, even though the gifts were placed in the brokerage account owned solely by Maureen Raynor.

That portion of the motion dealing with the electronic transfers in 2003 and 2004 is denied.

---

[3]"Value" is defined in Neb. Rev. Stat. U.C.C. § 1-204 as:

§ 1-204. Value.
 Except as otherwise provided in articles 3, 4, and 5, a person gives value for rights if the person acquires them:
 (1) in return for a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection;
 (2) as security for, or in total or partial satisfaction of, a preexisting claim;
 (3) by accepting delivery under a preexisting contract for purchase; or
 (4) in return for any consideration sufficient to support a simple contract.

As part of the motion, Maureen Raynor has requested a determination that John Raynor had no interest in the Janousek shares she received as an inheritance from her grandparents. The trustee has already agreed that he does not claim any interest in the Janousek shares. Therefore, that portion of the motion is moot.

IT IS ORDERED that the portion of the motion for partial summary judgment (Fil. #131) dealing with the gifts of share certificates made in December 2000, December 2001, and December 2002, and the electronic transfers in 2003 and 2004 is denied, and the portion of the motion dealing with John Raynor having no interest in the Janousek shares Maureen Raynor received as an inheritance from her grandparents is moot. That portion of the motion dealing with the shares received prior to 2000 is granted. The transfers of those shares were accomplished prior to the look-back period and are not avoidable. This is not a final appealable order.

DATED:      November 25, 2008

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    Alan Pedersen
    *Elizabeth Mary Callaghan
    U.S. Trustee

*Movant is responsible for giving notice of this order to parties not listed above if required by rule or statute.